UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONNELL JACKSON,

    Petitioner,

v.

WARDEN STEVIE KNIGHT,

    Respondent.

Civil Action
No. 23-2057 (CPO)

**OPINION**

**O'HEARN, District Judge.**

Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution ("FCI") Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. For the reasons stated in this Opinion, to the extent that Petitioner seeks a direct order for home confinement, the Court will dismiss that claim with prejudice for lack of jurisdiction. Additionally, assuming *arguendo* that the Court has jurisdiction to review decisions regarding home confinement for abuse of discretion, the Court will dismiss Petitioner's abuse of discretion claim without prejudice for his failure to exhaust his administrative remedies.

**I.    BACKGROUND**[1]

This case arises from Petitioner's request for home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). According to Petitioner, in the spring of 2023, Petitioner sought home confinement under the CARES Act. (ECF No. 1-1, at 2.) The staff at FCI Fort Dix granted his

---

[1] The Court will accept as true the factual allegations in the Petition for the purposes of this Opinion only. The Court has made no findings as to the veracity of Petitioner's allegations.

request at "every level . . . as being fully in accord with published [Bureau of Prisons'] standards." (*Id.*)  On March 30, 2023, however, the Bureau of Prisons' ("BOP") regional reentry manager denied Petitioner's request on the basis that he had violated the terms of his supervised release in the past. (*Id.* at 2–3.)  Petitioner states that he "has not undertaken the BOP's Administrative Remedy Program," to challenge the home confinement decision. (*Id.* at 6.)

In April of 2023, Petitioner filed the instant Petition under 28 U.S.C. § 2241, to challenge the BOP's decision to deny home confinement, arguing that the BOP violated his due process rights under the Fifth Amendment.  In terms of relief, Petitioner asks the Court to order the BOP to reassess his home confinement placement. (ECF No. 1, at 8; ECF No. 1-1, at 17.)  After reviewing the Petition, the Court ordered a limited answer on the issues of: (1) jurisdiction; (2) whether Petitioner had a liberty interest in CARES Act home confinement placement; and (3) to address Petitioner's arguments on exhaustion. (ECF No. 2.)  Respondent filed a Limited Answer opposing relief, (ECF No. 7), and Petitioner did not file a reply.

## II.  STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).  If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v.*

*Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

### III. DISCUSSION

#### A. Jurisdiction

Petitioner contends that the BOP denied his request for home confinement for an improper reason, in violation of the Due Process Clause of the Fifth Amendment. (ECF No. 1-1, at 11–17.) In response, the Government contends that this Court lacks jurisdiction to grant Petitioner home confinement under the CARES Act, Petitioner's due process claim lacks merit, and Petitioner failed to exhaust his administrative remedies.

First, to the extent Petitioner seeks a direct order for home confinement, this Court "has no authority to issue such an order." *United States v. Farlow*, No. 18-44, 2021 WL 1207485, at *4 (D.N.J. Mar. 30, 2021); *see also e.g.*, *Davey v. Warden Lamine N'Diaye*, No. 22-2254, 2023 WL 2570221, at *7 (D.N.J. Mar. 20, 2023); *Perri v. Warden of FCI Fort Dix*, No. 20-13711, 2023 WL 314312, at *3 (D.N.J. Jan. 19, 2023); *Hussain v. Thompson*, No. 21-1635, 2021 WL 5298898, at *3–4 (M.D. Pa. Nov. 15, 2021), *aff'd sub nom. Hussain v. Warden Allenwood FCI*, No. 22-1604, 2023 WL 2643619 (3d Cir. Mar. 27, 2023). Petitioner's request for home confinement falls under 18 U.S.C. § 3624(c)(2), as amended by § 12003(b)(2) of the CARES Act. *Farlow*, No. 18-44, 2021 WL 1207485, at *4.

"The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP." *Id*. (citing *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *8 (D.N.J. July 27, 2020)); *Hussain*, 2021 WL 5298898, at *3–4 (citing cases); *see also* 18 U.S.C. § 3621(b) (stating that "a designation

3

of a place of imprisonment under this subsection is not reviewable by any court"); *United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (finding that the BOP has the sole authority to place a prisoner on home confinement) *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]hether to transfer an inmate to home confinement is a decision within the exclusive discretion of the BOP.").

In other words, prisoners cannot use "§ 2241 as an end-run around the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the federal CARES Act, which vests in the Director of the Bureau of Prisons discretion to transfer an inmate to home confinement." *Olson v. Warden Schuylkill FCI*, No. 21-2436, 2022 WL 260060, at *2 (3d Cir. Jan. 27, 2022). Consequently, this Court lacks jurisdiction to issue an order for home confinement "under 18 U.S.C.§ 3624(c)(2) or its amendments under the CARES Act." *Farlow*, 2021 WL 1207485, at *4; *see also Davey*, 2023 WL 2570221, at *7 (finding that this Court "lacks jurisdiction to issue an order for home confinement under . . . the CARES Act"); *Rodriguez-Francisco v. United States*, No. 21-1180, 2023 WL 2089256, at *1 (M.D. Pa. Feb. 17, 2023) (same); *Perri*, 2023 WL 314312, at *3 (same). Accordingly, to the extent Petitioner seeks a direct order for home confinement, the Court will dismiss that claim with prejudice, for lack of jurisdiction.

### B. Abuse of Discretion and Exhaustion

Next, the Court will address Petitioner's primary argument, that the BOP denied his request for home confinement for an improper reason. (ECF No. 1-1, at 17.) The Court will construe Petitioner as arguing that although the Court cannot order the BOP to place him into home confinement, the Court can review the decision regarding home confinement for abuse of

discretion.[2]   As the Court intends to dismiss this claim on other grounds, the Court will assume *arguendo* that it has jurisdiction to hear Petitioner's abuse of discretion claim,[3] and in turn, his due process argument.  For the reasons stated below, the Court will dismiss Petitioner's abuse of discretion claim for his failure to exhaust his administrative remedies.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner may not ordinarily bring a § 2241 petition, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *E.g.*, *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Courts require exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761–62; *see also Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).  Nevertheless, exhaustion is not required where it would not promote these goals, such as where exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm" *Lyons*, 840 F.2d at 205; *see also, e.g.*, *Gambino*, 134 F.3d at 171 (finding that exhaustion is not required where petitioner demonstrates futility).

---

[2] Under this theory, as the Court cannot order the BOP to place Petitioner in home confinement, if the BOP abused its discretion, it appears that the only relief available would be to order the BOP to reassess Petitioner's eligibility for home confinement. *Perri*, 2023 WL 314312, at *5.

[3] As this Court has discussed in another case, it is questionable as to whether the Court has jurisdiction to review CARES Act home confinement decisions for abuse of discretion. *Romano v. Warden, FCI Fairton*, No. 23-1052, 2023 WL 3303450, at *4 (D.N.J. May 8, 2023).

To determine whether a prisoner has exhausted his administrative remedies, courts look to the agency's applicable grievance procedure and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Pursuant to the BOP's administrative remedy program, an inmate must generally attempt to informally resolve the issue by presenting it to staff through a BP-8 form. *See* 28 C.F.R. § 542.13. If that fails to informally resolve the issue, then the inmate may submit a BP-9 form to the warden. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with the warden's response may appeal to the regional director with a BP-10, and an inmate who is dissatisfied with the regional director's decision may appeal to the general counsel in the central office, through a BP-11. *See* 28 C.F.R. § 542.15(a). An appeal to the general counsel is the final level of administrative appeal. *Id.*

With those principles in mind, Petitioner concedes that he "has not undertaken the BOP's Administrative Remedy Program,"[4] and therefore, has not exhausted his administrative remedies. (ECF No. 1-1, at 6.) Petitioner argues that the Court should excuse his failure to exhaust because: (1) the administrative remedy process *could* take too long to complete, and (2) requiring exhaustion could subject him to "irreparable harm," because the BOP allegedly loses its authority to place him in home confinement on May 11, 2023. (*Id.* at 6–11.) Petitioner does not specify the "harm" at issue, but the Court will construe the harm as his continued incarceration in prison. (*Id.*)

Turning to Petitioner's first argument, Petitioner argues that exhaustion would be futile because he may not complete the administrative remedy process prior to the CARES Act expiration date. (*Id.* at 7–8.) "District courts within the Third Circuit have repeatedly rejected the argument that a federal prisoner can be excused from the exhaustion requirement simply because

---

[4] It appears that Petitioner filed a request for an administrative remedy on April 3, 2023, but did not pursue the administrative remedy process. (ECF No. 1-1, at 3.)

6

he . . . may not finish his administrative appeal[s] before a potential habeas claim would become moot." *Bortolotti v. Knight*, No. 22-6137, 2022 WL 17959577, at *2 (D.N.J. Dec. 27, 2022); *Sutton v. Moser*, No. 19-210, 2019 WL 2743959, at *4 (W.D. Pa. July 1, 2019); *Allah v. Rechtenwald*, No. 15-267, 2016 WL 6081524, *3 (W.D. Pa. Aug. 19, 2016) (listing cases); *Rosales v. Hollingsworth*, No. 15-3840, 2015 WL 4314572, at *2 (D.N.J. July 14, 2015).

Courts have rejected these time restriction arguments because they allow prisoners to engage in the self-serving strategy of waiting until it is too late to engage in the administrative remedy process, and then argue that there is insufficient time for those remedies to run their course. *E.g.*, *Ortiz v. Zickefoose*, No. 10-6767, 2011 WL 6140741, at *4 (D.N.J. Dec. 8, 2011) (citing cases); *Velez v. Zickefoose*, 2010 WL 5186158 at *3–4 (D.N.J. Dec. 15, 2010) ("such self-serving strategy has never been rewarded by the courts with habeas relief"). In the present case, Petitioner could have sought home confinement under the CARES Act at some point earlier than "spring 2023." (ECF No. 1-1, at 2.) Petitioner offers no explanation as to why he did not seek home confinement at an earlier time. (*See generally*, ECF No. 1-1.) Had he done so, he could have started the administrative remedy process earlier, and had sufficient time to exhaust his administrative remedies. Critically, the BOP could have also agreed with Petitioner and granted his request for relief.

Further, "Petitioner's case fits squarely within the parameters of the purposes of exhaustion." *Cf. Furando v. Ortiz*, No. 20-3739, 2020 WL 3264161, at *3 (D.N.J. June 17, 2020*)*. First, although staff verbally "told" Petitioner that his request was denied due to a previous violation of supervised release, this Court lacks a formal decision to review. (ECF No. 1-1, at 3.) As a result, the Court faces a lack of information, which shows the need for "Petitioner to attempt to resolve this at the administrative level first" and develop the record. *See Chaparro v. Ortiz*, No.

7

20-5272, 2020 WL 4251479, at *5 (D.N.J. July 24, 2020) (noting the need to develop the factual record when the BOP's efforts are in dispute).

"Second, Petitioner could potentially obtain relief from the BOP without using judicial resources." *Furando*, 2020 WL 3264161, at *3. Petitioner simply assumes that the BOP will reject his administrative remedies, but the BOP could very well agree with Petitioner and grant his request for home confinement. *See Shoup v. Shultz*, No. 09-0585, 2009 WL 1544664, at *5 (D.N.J. June 2, 2009) ("Having no information as to what the decisions of these officials would be, this Court cannot find . . . [that] these decisions would be 'hypothetically illegal,' same as the Court cannot deem the exhaustion process 'futile.'"). Finally, as Petitioner is confident that the BOP has erred, the BOP should have an opportunity to correct its own errors. Accordingly, for all those reasons, the Court finds that requiring Petitioner to exhaust his administrative remedies would promote the goals of exhaustion, and that exhaustion is not futile in this case.

As to Petitioner's second argument, that his continued incarceration will subject him to "irreparable harm," this Court disagrees. The risk of irreparable harm requires a clear showing of immediate irreparable injury or a presently existing actual threat. *Douvos v. Quintana*, 382 F. App'x 119, 122 (3d Cir. 2009); *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). Without more,[5] in analogous situations, courts have rejected the notion that a prisoner will "suffer irreparable injury if he is denied early release or release to a halfway house." *Douvos*, 382 F. App'x at 122; *United States v. Knight*, No. 08-141-06, 2017 WL 75575, at *3 (M.D. Pa. Jan. 9, 2017) (citing *Kotz v. Lappin*, 515 F. Supp. 2d 143, 152 (D.D.C. 2007) ("Without

---

[5] For example, if Petitioner faced a specific threat of violence, his continued incarceration could constitute a risk of irreparable harm. Petitioner's filings, however, do not allege that he is in any present danger. (ECF No. 1); *see Douvos*, 382 F. App'x at 122 (concluding that the Petitioner failed to demonstrate that his continued incarceration presented a risk of irreparable harm since, "he has already served, apparently without serious incident, four years of his five-year sentence").

showing that his incarceration is wrongful, the court is loathe to declare that the [prisoner] would suffer 'extreme or very serious damage' by serving the remainder of a properly-imposed sentence.")).  As Petitioner does not allege that he faces any threat of immediate injury or other harm, the Court finds that he has failed to demonstrate that the BOP's administrative remedy program is "clearly . . . inadequate to prevent [an] irreparable harm." *Lyons*, 840 F.2d at 205.

In his Petition, Petitioner relies on *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005), where the Eastern District of New York observed that "[w]ere Pimentel required to pursue administrative remedies prior to bringing this action, he would likely be done serving much, if not all of his entire sentence[,] such that his request would become moot."  (ECF No. 1-1, at 11.)  Petitioner argues that this Court should similarly excuse his failure to exhaust. (*Id.*)

This Court disagrees.  In *Pimentel*, the court did not excuse the inmate's failure to exhaust because of a time restriction. *Pimentel*, 367 F. Supp. 2d at 371.  As that court explained, "[t]he fact that Pimentel did not file the instant petition until the eve of his final six months in custody, *does not* of course, compel this court to waive the exhaustion of remedies requirement for fear that Pimentel would suffer imminent harm." *Id*. at 371 n.6 (emphasis added).  Rather, the court excused the failure to exhaust because, pursuant to a statutory change, "the BOP [had] already categorically exercised its discretion to deny Pimentel the relief he seeks." *Id*.

In contrast, in the present case, Petitioner is not "challenging the legality of BOP regulations or presenting an issue of statutory construction that might justify excusing him from the exhaustion requirement." *E.g.*, *Sutton*, 2019 WL 2743959, at *4; *see also Wells v. Spaulding*, No. 22-1551, 2022 WL 17228665, at *2 (M.D. Pa. Nov. 23, 2022); *Bradley v. Spaulding*, No. 20-2294, 2021 WL 1964598, at *2 (M.D. Pa. May 17, 2021).  Rather, Petitioner argues that the statutes

9

and regulations at issue are valid, but that for unclear reasons, the BOP has failed to comply with them. (*See generally*, ECF No. 1-1.)

Nor does the BOP's CARES Act decision "clearly and unambiguously violate . . . [Petitioner's] constitutional rights," so as to excuse exhaustion. *Lyons*, 840 F.2d at 205. To state a procedural due process claim under the Fifth Amendment, a petitioner must demonstrate that: (1) he was deprived of an interest that is encompassed within the Fifth Amendment's protection of "life, liberty, or property," and (2) that the procedures available to him did not provide "due process of law." U.S. Const. amend. V; *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 191 (D.N.J. 2021). Generally, due process requires at least the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333; *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002). "Before any process is due under the Fifth Amendment, a claimant must demonstrate that there has been a deprivation of an interest in life, liberty, or property." *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001).

In this Circuit, the case law regarding due process and CARES Act home confinement is sparse. The courts that have addressed the matter have held that prisoners do not have a liberty interest in CARES Act home confinement, and therefore cannot state a due process claim. *Shah v. Warden, FCI Fort Dix*, No. 22-6306, 2023 WL 1794891, at *2 (D.N.J. Feb. 7, 2023); *Coburn, v. Spaulding*, No. 20-01389, 2021 WL 3026851, at *6 (M.D. Pa. June 15, 2021), *report and recommendation adopted sub nom. Coburn v. Spaulding*, 2021 WL 2678706 (June 30, 2021). Courts throughout the country have arrived at similar conclusions. *See, e.g.*, *Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023); *Myers v. Ashland*, No. 22-34, 2022 WL 17573141, at *2 (E.D. Ky. Dec. 9, 2022); *Holt v. Warden*, 539 F. Supp. 3d 1005,

1008-09 (D.S.D. 2021); *United States v. Rogers*, No. 15-58, 2020 WL 4086372, at *2 (W.D. La. July 20, 2020); *Poe v. Zook*, No. 20-101, 2020 WL 6947344, at *2 (N.D. Tex. June 18, 2020).

With regard to home confinement cases prior to the CARES Act, courts in this Circuit have similarly held that prisoners have no liberty interest in being placed in home confinement. *See, e.g.*, *Kaiser v. Hollingsworth*, No. 16-1288, 2016 WL 6246308, at *4 (D.N.J. Oct. 25, 2016); *Romero v. Meeks*, No. 14-11, 2014 WL 4796579, at *8 (W.D. Pa. Sept. 26, 2014); *Rivera v. Schultz*, No. 09-6133, 2010 WL 4366122, at *3 (D.N.J. Oct. 27, 2010).

Against this backdrop, this Court cannot conclude that the decision to deny home confinement "clearly and unambiguously violate[d] . . . [Petitioner's] constitutional rights." *Lyons*, 840 F.2d at 205. Taken together, Petitioner has not shown that exhaustion would be futile, that requiring exhaustion would subject him to irreparable harm, or that the BOP's actions clearly and unambiguously violated a constitutional right. Accordingly, the Court will not excuse Petitioner's failure to exhaust and will dismiss his abuse of discretion claim for failure to exhaust his administrative remedies.

Of course, if Petitioner properly exhausts his administrative remedies, he may then seek to challenge the BOP's decision and raise his abuse of discretion based due process arguments at that time. The Court would expect that through the administrative process, the BOP would develop a detailed factual record to support its actions to permit the Court to do a sufficient review for abuse of discretion.

## IV.   CONCLUSION

For the foregoing reasons, to the extent Petitioner seeks an order for home confinement, the Court will dismiss that claim with prejudice for lack of jurisdiction. The Court will dismiss

without prejudice Petitioner's abuse of discretion based claim, for his failure to exhaust his administrative remedies. An appropriate Order follows.

DATED: June 16, 2023

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**
